1
2
3
4
5

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD ALLEN YOUNG, | ) 1:14-cv-01942-BAM (PC) |
| Plaintiff, | )<br>) ORDER DISMISSING COMPLAINT WITH |
| v. | ) LEAVE TO AMEND<br>) (ECF No. 1) |
| M. D. BITER, et al., | )<br>) THIRTY-DAY DEADLINE |
| Defendants. | )<br>) |
| | ) |

## I.    Screening Requirement and Standard

Plaintiff Howard Allen Young ("Plaintiff") is a state prisoner proceeding pro se and in

forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1

(Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)).  Plaintiff's

complaint, filed on December 5, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. §

1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28

U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.  **Plaintiff's Allegations**

Plaintiff is currently housed at Kern Valley State Prison, where the events in the complaint are alleged to have occurred.  Plaintiff names the following defendants:  (1) Warden M. D. Biter; (2) Appeals Coordinator S. Tallerico; (3) Community Resource Manager Cherylee Wegman; (4) Jewish Chaplain Paul Shleffar; (5) CDCR A Yard Chaplain (Islamic) Maurice Howard; (6) Former Inmate Assignment Staff K. Doran; and (7) the California Department of Corrections and Rehabilitation ("CDCR").

Plaintiff is a Messianic Jew, claiming that he is being denied Kosher Diet Meals by CDCR, Rabbi Paul Shleffar and Cherylee Wegman because they do not recognize Messianic Judaism.  Plaintiff further claims that Warden Biter, Cherylee Wegman and Maurice Howard interfere with his religious practice by failing to grant his Jewish Services Proposal and Proposal Chrono.  Plaintiff asserts that Cherylee Wegman granted the April 2014 Passover Event, but no food was provided to him.  Plaintiff also asserts that S. Tallerico has wrongfully screened out his appeals, which has interfered with his access to the courts or the appeals process.

In Claim 1, Plaintiff alleges that he is a member of the United Messianic Jewish Assembly (UMJA) and has been given chartered authority to represent and head Messianic Jewish Services.  Plaintiff asserts that he has been wrongfully denied both Kosher meals and Inmate Minister status by Rabbi Shleffar, Cherylee Wegman and Warden Biter, even though CDCR recognizes him as a representative of Jewish denomination.

Plaintiff currently heads the Messianic Jewish services at Kern Valley State Prison and purports to assert this complaint on behalf of all those participating in the A-Yard Messianic Jewish Services.

According to exhibits attached to Plaintiff's complaint, he has pursued more than one habeas corpus action in Kern County Superior Court alleging that the prison was unduly obstructing the practice of his Messianic Jewish Faith.  (Exs. A, B.)  Although exhibits attached to his complaint demonstrate that he was denied Kosher meals because prison records indicated that Plaintiff was either Christian or Muslim, not Jewish, at least one habeas petition includes Plaintiff's complaints about the kosher diet he was receiving.  (Ex. B.)

In May 2014, Plaintiff was authorized for release to participate in Messianic Jewish services.

In Claim 2, Plaintiff alleges that following a court order on October 31, 2014, in his habeas action (HC 14138A), Plaintiff sought relief by way of a 602.  The 602 was screened out. Plaintiff now seeks relief from this Court regarding his Jewish Services Proposal and the Proposal Chrono.  Plaintiff requests injunctive relief for A yard, where Chaplain Maurice Howard is responsible.  Plaintiff contends that since KVSP does not have a Messianic Jewish Chaplain and Plaintiff being the UMJA representative, Plaintiff is eligible and qualified to conduct all necessary Messianic Jewish Services and to minster to the religious needs of inmates of the Messianic Jewish Faith.

In Claim 3, Plaintiff alleges that his attempts to seek relief have continually been stalled by S. Tallerico, appeals coordinator.  Plaintiff contends that his 602 Appeals (KVSP-0-14-03885 and KVSP 0-14-03779) were screened out on November 21, 2014.  Plaintiff filed KVSP-0-14-03779 seeking participation in the Jewish Kosher Diet Program, which was denied by Rabbi Paul

Shleffar because Plaintiff's faith was not a recognized religion for inclusion in the kosher meal program. Rabbi Shleffar stated that Plaintiff should submit additional input or information in writing with the CDCR 3030A for re-evaluation. Plaintiff resubmitted the CDCR 3030 with attached letters, articles and case law.

In screening out the 602 KVSP-0-14-03779, S. Tallerico indicated that it was a duplicate appeal that had been previously cancelled in May 2011. Plaintiff argues that the letters and attachments were dated after the May 2011 denial and should be considered additional input or information.

Plaintiff requests that the Court order CDCR to provide him with the Jewish Kosher Diet meals and conduct an investigation into S. Tallerico's screening out of 602 appeals. Plaintiff also seeks compensation and damages.

In Claim 3, Plaintiff alleges that he was retaliated against and wrongfully unassigned from the A Yard Chapel Clerk position by Cherylee Wegman and Assignment Officer Doran without due process based on Plaintiff's litigation and/or 602 efforts and his Messianic Jewish beliefs.

Plaintiff also alleges that he has been wrongfully denied single cell status, that the procedure to grant single cell status violates the Eighth Amendment and that forced double celling contributes to cell fights. Plaintiff further alleges that he has been wrongfully denied out-of-state transfer because CDCR has not considered Plaintiff's family situation. Plaintiff lastly contends that his housing status should be "STG Black Jew from Massachusetts." Plaintiff claims that this status would limit any potential cell mate or allow him to be single-celled based on his previous 115 RVRs and psychiatric evaluation reports. Plaintiff requests transfer to San Quentin for Patten University courses.

In Claim 4, Plaintiff alleges that CDCR has failed to restore all his previously forfeited credits that are legible for restoration. Plaintiff contends that CDCR has failed to remove, re-evaluate and provide Plaintiff with requested information regarding the Compas Evaluation Program from Plaintiff's C-file records or to provide Plaintiff with pertinent facts about the margins of error, who invented the test, allow for re-test and how the test scores are evaluated

and categorized.  Plaintiff contends that CDCR has miscalculated Plaintiff's release date by applying only 20% good time credits instead of 50% good time credits.

In Claim 5, Plaintiff alleges that he has been denied medicated lotion and/or A&D ointment for his excessively dry skin condition.  Instead, Plaintiff has been told to purchase it. Plaintiff requests a Court order for the medicated lotion or A&D ointment, which he was previously prescribed on December 1, 2009.

Plaintiff further alleges that he has received inferior dental care.  When permanent bridges were damaged, CDCR would not replace them.  Plaintiff was told that he could receive a removable dental plate.  Plaintiff seeks a Court order requiring CDCR to repair and/or replace Plaintiff's missing teeth with permanent bridges or implants.

Plaintiff also alleges that CDCR is in violation of the three judge court order by failing to provide him with a parole hearing date, transfer to a pre-release type facility where he could receive vocation/education skills and consideration for early release/re-entry hubs.

In Claim 6, Plaintiff alleges that he has had abdominal pain and discomfort for over 2 years, which has worsened.  Plaintiff contends that CDCR has not provided him with a requested CT scan.  Plaintiff requests that this Court order CDCR to provide him with a CT scan and/or a referral to a specialist to find the basis for Plaintiff's abdominal pain.

Plaintiff also alleges that he has been denied an x-ray on his left and right wrists, which have been painfully deteriorating.  Plaintiff asserts that he was overcharged for the $5.00 co-payment and subject to trust account/office overcharging/withdrawals.  Plaintiff also had to submit to a urinalysis, but was never given a copy of the results.

Plaintiff further alleges that he has been subjected to excessive strip searches, lockdowns, and denied yard/time outside the cell for incidents that do not involve him.  Plaintiff contends that Warden Biter is responsible for the program status reports, lockdowns/modified programs, strip searches, denial of yard/time outside the cell and the supervision and training of personnel at KVSP.

///

///

### III.   Deficiencies of the Complaint

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18, and fails to state a cognizable claim.  As Plaintiff is proceeding pro se, he will be given an opportunity to amend his complaint.  To assist him, Plaintiff is provided with the pleading and legal standards that appear applicable to his claims.  Plaintiff should amend only those claims that he believes, in good faith, are cognizable.

#### A.  Pleading Requirements

##### 1.   Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As noted above, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint is not a short and plain statement of his claims.  Plaintiff's factual allegations are not in chronological order and many of his assertions are conclusory statements. Plaintiff may not simply complain about every incident or issue that he has with prison officials in a single filing.  If Plaintiff chooses to amend his complaint, he should briefly and clearly state the facts giving rise to his claims for relief against the named defendants.

##### 2.   Federal Rule of Civil Procedure 18

Federal Rule of Civil Procedure 18 states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also

to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Here, Plaintiff attempts to bring suit against multiple defendants for different incidents at different times.  For example, Plaintiff complains about the denial of dental care by an unidentified medical provider while simultaneously complaining about the denial of Kosher meals by Defendants CDCR, Rabbi Paul Shleffar, Cherylee Wegman and Warden Biter. Plaintiff may not pursue unrelated claims against different defendants in a single action.  If Plaintiff chooses to file an amended complaint and it fails to comply with Rule 18(a), all unrelated claims will be subject to dismissal.

### 3.   Eleventh Amendment Immunity-CDCR

Plaintiff names CDCR as a defendant.  However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state.  <u>Wolfson v.  Brammer</u>, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted).  While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," <u>Wolfson</u>, 616 F.3d at 1065-66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought, <u>e.g.</u>, <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100, 104 S.Ct. 900 (1984); <u>Buckwalter v. Nevada Bd. of Medical Examiners</u>, 678 F.3d 737, 740 n.1 (9th Cir. 2012).  Thus, Plaintiff may not maintain a claim against CDCR.

Insofar as Plaintiff seeks relief pursuant to RLUIPA, such a claim may proceed only for injunctive relief against defendants acting within their official capacities.  <u>Wood v. Yordy</u>, 753 F.3d 899, 904 (9th Cir. 2014).

### 4.   Supervisory Liability

Insofar as Plaintiff attempts to impose liability against any defendants based solely on their roles as supervisors, he may not do so.  Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. <u>Crowley v. Bannister</u>, 734 F.3d 967, 977 (9th Cir. 2013); <u>accord</u> <u>Lemire</u> v. Cal. Dep't of

Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa Cnty., 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989)) (internal quotation marks omitted).

### B.  Legal Standards

#### 1.  Free Exercise Clause of the First Amendment

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008).

Plaintiff complains about his ability to practice his religion, denial of his status as an inmate minister and denial of a kosher diet.

With regard to his religious practice, Plaintiff admits, and his exhibits demonstrate, that he has been released to practice his religion and services were scheduled. (ECF No. 1, p. 48-49, 52-53.) With regard to the denial of his status as an inmate minister, this does not appear related to conduct which he sincerely believes is consistent with his faith. Further, this issue appears to have been addressed by a Petition for Writ of Habeas Corpus (HC 14138A) and was denied on October 31, 2014. (ECF No. 1, p. 15.) With regard to denial of a kosher diet, exhibits attached

to the complaint demonstrate that Plaintiff had been receiving a kosher diet, but complained about its adequacy in habeas proceedings.  (ECF No. 1, p. 47.)

Given Plaintiff's lack of dates and other factual contentions, the Court cannot adequately determine whether his constitutional rights have been violated.  The Court will not scour Plaintiff's exhibits, which total more than 200 pages, to find a constitutional claim.  Plaintiff will be given leave to cure these deficiencies.

## 2.   Religious Land Use and Institutionalized Persons Act ("RLUIPA")

A claim under RLUIPA may proceed only for injunctive relief against defendants acting within their official capacities. Wood, 753 F.3d at 904 (RLUIPA does not contemplate liability of government employees in individual capacity); Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012) (money damages not available for RLUIPA claim against defendants sued in their official capacity); Graddy v. Ding, 2014 WL 6634580, *3 (E.D. Cal. Nov. 21, 2014).

To state a claim for violation of RLUIPA, Plaintiff must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of his religious beliefs; Plaintiff bears the initial burden of persuasion on this issue. Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124–25 (9th Cir. 2013) (quotation marks omitted).

"Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. (citing Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2325, 161 L.Ed.2d 1020 (2005)) (internal quotation marks omitted).

As with his First Amendment claim, Plaintiff's allegations are not sufficiently clear to determine whether or not Plaintiff has stated a claim for violation of RLUIPA.

## 3.   Appeals Processing

Plaintiff cannot pursue any claims against staff relating to processing and review of his inmate appeals. The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the

appeals process was deficient. <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). To state a claim under section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, <u>Iqbal</u>, 556 U.S. at 677; <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002), and liability may not be based merely on Plaintiff's dissatisfaction with the administrative process or a decision on an appeal, <u>Ramirez</u>, 334 F.3d at 860; <u>Mann</u>, 855 F.2d at 640.

### 4.  Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005); <u>accord</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

In Claim 3, Plaintiff alleges that he was retaliated against and wrongfully unassigned from the A Yard Chapel Clerk position by Cherylee Wegman and Assignment Officer Doran based on his litigation and/or 602 efforts.  At best, Plaintiff's allegations are conclusory.  Further, he has not alleged that Defendants' actions did not advance a legitimate correctional goal.

### 5.  Eighth Amendment – Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and

wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Here, Plaintiff's allegations regarding his medical care are scattershot, conclusory and do not link any specific defendant to his claims of deliberate indifference to serious medical needs. To the extent Plaintiff merely disagrees with the course of treatment for his wrist, dry skin, abdominal pain and teeth, he cannot state a cognizable Eighth Amendment claim. A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989).

### 6.  Eighth Amendment-Conditions of Confinement

Plaintiff appears to allege that lockdowns violated his rights under the Eighth Amendment. Although unclear, it appears that Plaintiff is complaining about the denial of yard time. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The circumstances, nature, and duration of the deprivations are relevant in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).

Here, Plaintiff has not alleged sufficient facts to demonstrate that the conditions he is complaining of are grave enough to form the basis of an Eighth Amendment claim. Plaintiff does not include facts regarding the circumstances, nature or duration of any claimed violation.

### 7. Prison Transfer

Plaintiff appears to seek a prison transfer. However, there is no substantive liberty interest in being housed in a particular prison and an inmate has no right to incarceration in the prison of his choice. Olim v. Wakinekona, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983); White v. Lambert, 370 F.3d 1002, 1013 (9th Cir. 2004) (overruled on other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010)).

### 8. Good Time Credits

To the extent Plaintiff requests restoration of good time credits, he may not pursue such a claim in a section 1983 action. A claim for restoration of credits lies at "the core of habeas corpus." Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (quotation and citation omitted).

### 9. Remedial Orders in Other Cases

To the extent that Plaintiff is attempting to base a claim on alleged violations of any order or remedial plan in another case, such violations do not provide an independent basis for damages in this action. See Cagle v. Sutherland, 334 F.3d 980, 986–87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). "[R]emedial orders . . . do not create 'rights, privileges or immunities secured by the Constitution and laws' of the United States." Hart v. Cambra, 1997 WL 564059, *5 (N.D.Cal. Aug.22, 1997) (quoting Green, 788 F.2d at 1123–24). Plaintiff may not state a section 1983 claim based on the failure to comply with any remedial plan or consent decree.

**C.  Conclusion and Order**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18, and fails to state a cognizable claim upon which relief may be granted under section 1983.  The Court will provide Plaintiff with an opportunity to amend his complaint to cure the identified deficiencies.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Iqbal, 556 U.S. at 676.  Plaintiff also must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 555).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927.  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a complaint form;

2.      Plaintiff's complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 18 and for failure state a claim.

3.      Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and

4.      **If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and for failure to state a claim.**

IT IS SO ORDERED.

Dated:   __**June 8, 2015**__                    ___/s/ *Barbara A. McAuliffe*___
                                                    UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28